# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Brandon Irvin (M-35843), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18 C 50105 |
| v. ) | |
| ) | Judge Philip G. Reinhard |
| ) | |
| Wexford Health Source, Inc., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

The court finds plaintiff's response [5] sufficient to discharge the court's show cause order. Plaintiff's application for leave to proceed *in forma pauperis* [3] is granted. The court orders the trust fund officer at plaintiff's place of incarceration to deduct $32.15 from plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee, and to continue making monthly deductions in accordance with this order. The Clerk of Court shall send a copy of this order to the trust fund officer at Dixon Correctional Center. The Clerk of Court is directed to file plaintiff's complaint [1]. However, summonses shall not issue at this time. The court sua sponte recruits attorney Jeffrey Scott Becker, Swanson Martin & Bell LLP, 330 N. Wabash Avenue, Chicago, IL 60611 (312-321-8425), jbecker@smbtrials.com to represent plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rules 83.11(h) and 83.37. By September 4, 2018 counsel shall file an appearance and a brief status report indicating whether he intends to proceed with the complaint or file an amended complaint. If counsel believes that proceeding with the complaint or filing an amended complaint would be inconsistent with his Rule 11 obligations, he should so inform the court. The Clerk of Court is directed to send a copy of this order to plaintiff and to attorney Becker. Counsel is encouraged to visit the court's *pro bono* web page for various resources related to *pro bono* representation. The recruited attorney falls within the class of users listed in the Electronic Public Access fee schedule adopted by the Judicial Conference of the United States, therefore, the above-named attorney shall be exempt from the payment of fees for access via PACER to the electronic case files maintained in this court for the above-captioned case only. The recruited attorney is directed to open a separate PACER account to only be used for the above-captioned case, and fees are exempt for the above-captioned case only. The assigned attorney shall not be exempt from the payment of fees incurred in connection with other uses of the PACER system in this court. This exemption is valid immediately and for the duration of the attorney's participation in the matter. This exemption may be revoked at the discretion of the court at any time. The attorney shall contact the PACER Service Center at 1-800-676 6856 or via the link below to create the new PACER account and to make any necessary arrangements for the waiver. A copy of this order shall be sent to the PACER Service Center at

http://www.pacer.psc.uscourts.gov/register.html. A copy of this order shall also be sent to the Systems Department of the Northern District of Illinois.

**STATEMENT**

Plaintiff Brandon Irvin, a prisoner at Dixon Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants ("Wexford Health Source, Inc.," Warden Varga, Nurse Practitioner Mershon, and Administrative Review Board Chairperson Dave White) acted with deliberate indifference to his serious medical needs. *See* [1]. Currently before the court are plaintiff's response [5] to the court's show cause order, his application to proceed *in forma pauperis* [3], and his complaint [1] for initial review. The court addresses each, in turn, below.

On May 2, 2018, the court ordered plaintiff to show cause in writing why he should be allowed to proceed *in forma pauperis* (or pay the full statutory filing fee associated with this action). *See* [4]. On June 4, 2018, plaintiff submitted a response [5] in which he explains that "[he] had no intention on suing . . . 6 month[s] ago. [His] injury occurred in December of 2017, 4 months prior to [his] filing this suit." (*Id.*, p. 1.) He explains further that he attempted to obtain medical care (the medical care that is the subject of this lawsuit) by way of the prison's grievance system. (*Id.*) When he obtained no relief through same, he filed the instant lawsuit. (*Id.*) Plaintiff represents that he did not intentionally deplete his trust fund account in the six months leading up to the filing of this lawsuit. (*Id.*) He also points out that his financial situation has changed since the filing of this lawsuit insofar as he is no longer receiving funds from his mother and grandfather. (*Id.*, p. 2.) The court notes that a change in his financial status after the filing of the lawsuit has no effect on the court's decision whether to grant a *pro se* prisoner plaintiff *in forma pauperis* status insofar as the PLRA looks to the six months preceding the filing lawsuit (not the time after the filing of the lawsuit). Nonetheless, given plaintiff's representations about the timing of the lawsuit (and that he did not intentionally deplete his trust fund account in the six months leading up thereto), the court will discharge the May 2, 2018 show cause order.[1]

Plaintiff's application for leave to proceed *in forma pauperis* [3] demonstrates he cannot prepay the filing fee and is thus granted. Pursuant to 28 U.S.C. § 1915(b)(1), (2), the court orders: (1) plaintiff to immediately pay (and the facility having custody of him to automatically remit) $32.15 to the Clerk of Court for payment of the initial partial filing fee and (2) plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or

---

[1] Plaintiff, however, is advised that "[t]he opportunity to proceed *in forma pauperis* is a privilege provided for the benefit of indigent persons and the court system depends upon the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Chung v. Dushane*, No. 03 C 5955, 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003) (citing *Denton v. Hernandez*, 504 U.S. 25, 27 (1992)). Along these lines, plaintiff is reminded that he signed and printed his name on his IFP application under the statement: "I declare under penalty of perjury that the above information is true and correct. I understand that 28 U.S.C. § 1915(e)(2)(A) states that the court shall dismiss this case at any time if the court determines that my allegation of poverty is untrue." ([3], p. 4.)

more, until the $350 filing fee is paid in full. The court directs the Clerk of Court to ensure that a copy of this order is mailed to each facility where plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify plaintiff's name and the case number assigned to this case.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court is required to screen plaintiff's complaint and to dismiss the complaint, or any claims therein, if the court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Courts screen prisoner litigation claims in the same manner as ordinary Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff alleges that "[b]etween January 15[] and July 15, 2017, [he] went to the HCU to request a bottom bunk permit" because he "had upper and lower back pain and his lower back had been bro[]ken." ([1], p. 3.) Plaintiff alleges that he was "put in" for x-rays, which showed that he had arthritis in his upper and lower back. (*Id.*)

Plaintiff alleges he asked defendant Mershon for a "lower bunk permit" and she refused his request. (*Id.*) Plaintiff alleges that in December 2017, he was climbing onto a top bunk when he felt a "sharp pain in his upper back, which caused him to slip and [he] grabbed the bunk, trying to prevent the fall." (*Id.*) Plaintiff alleges that he also felt a "sharp pain in his belly button." (*Id.*)

Plaintiff alleges that three weeks after the incident, he felt a "large lump" in his belly button area and "immediately put in for a sick call." (*Id.*) Plaintiff apparently met with defendant Mershon and was told that he had a hernia. (*Id.*) Plaintiff alleges that defendant

3

Mershon told plaintiff that "Wexford would not pay for the hernia surgery because they believe it is cosmetic." (*Id.*) Plaintiff alleges that defendant Mershon told plaintiff not to do any abdominal exercise or "exert" his abdomen because "the hernia would get larger" and become painful. (*Id.*) Plaintiff alleges that defendant Mershon told him "to continue to push the hernia in because the bowel can build up and it could cause infections." (*Id.*) Plaintiff alleges that had defendant Mershon issued the low bunk permit, he would not have climbed on the top bunk and injured himself. (*Id.*) Plaintiff states that "[a]s a result of the Defendants' refusal to provide [him] with adequate medical care, he was left to suffer in pain." (*Id.*, p. 4.)

Plaintiff alleges that at all times relevant to the complaint, Wexford "maintained a policy, procedure, and practice[] at Dixon C.C. under which inmates with serious medical conditions . . . were denied access to adequate medical care." (*Id.*) Plaintiff alleges that Wexford's "employees are not properly trained on how to process and treat inmates with serious medical conditions within [an] appropriate time." (*Id.*) Plaintiff alleges that Wexford "lacks a procedure for treatment of hernias and consider[s] it to be cosmetic, even with the tremendous amount of pain that associates with a hernia." (*Id.*) Plaintiff alleges further that Wexford "uses cost cutting measures when treating an inmate[], like [his] hernia medical needs, to prevent future stomach infections and extreme pain." (*Id.*) Plaintiff claims that as a result of the "direct and proximate result of the unconstitutional policies[,] procedures[,] and practices at Wexford[,] [he] is being forced to live with unnecessary and unreasonable pain and suffering." (*Id.*)

Plaintiff alleges that he wrote to defendant Varga about defendant Mershon refusing to provide him with a low bunk permit "and as well, he slipped trying to get up on the top bunk and now [he] has a hernia." (*Id.*) Plaintiff states that defendant Varga "was well aware of this, he even deemed . . . Plaintiff's emergency grievance was not an emergency." (*Id.*) Plaintiff claims that defendant Varga "took no action to ensure that . . . Plaintiff received adequate medical care and treatment." (*Id.*, p. 5.) Plaintiff alleges that as a result, he has been "forced to endure unnecessary pain and suffering." (*Id.*) Attached to the complaint are a January 11, 2018 grievance and the ARB's return of grievance form. (*Id.*, pp. 8-10.)

Plaintiff alleges that David White worked as an Administrative Review Board Chairperson and he "reviewed . . . Plaintiff[']s grievance and refused to process the grievance or "make sure that [Plaintiff] received adequate medical care." (*Id.*, p. 5.) Plaintiff claims that defendant White "did not investigate . . . Plaintiff's medical claims or conditions." (*Id.*) Plaintiff alleges further that defendant White "took no action to ensure that the Plaintiff received adequate medical care or treatment, when he could have." (*Id.*)

Plaintiff names "Wexford Health Source, Inc.," Warden Varga, Nurse Practitioner Mershon, and ARB Chairperson Dave White as defendants in this action. (*Id.*, p. 1.)

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010) ("same legal standards"

4

apply to "deliberate indifference claims brought under either the Eighth or Fourteenth Amendment" by prisoners and pretrial detainees, respectively). To state a claim based on deliberate indifference, an inmate must first show that "his medical condition is 'objectively, sufficiently serious.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). He must then show that prison officials were deliberately indifferent to that condition. *Id.* at 653-64. The concept of deliberate indifference encompasses the refusal of effective treatment, *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011), knowing delay of treatment to the point that an injury is exacerbated or pain is unnecessarily prolonged, *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010), and erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards, *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016). It should be noted, however, that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Estelle*, 429 U.S. at 106; *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Liberally construing plaintiff's complaint, his factual allegations are sufficient to state a plausible claim of deliberate indifference to a serious medical need against the individual defendants identified in the complaint (Warden Varga, Nurse Mershon, and ARB Chairperson Dave White). Although inmates are not constitutionally entitled either to "demand specific care" or even to receive the "best care possible," *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011), the court finds plaintiff's claim against the individual defendants named in the complaint (Varga, Mershon, and White) colorable -- at least at this stage of the proceedings. Plaintiff claims he suffers from upper and lower back pain and arthritis in these areas. He claims that at some point, he requested a low bunk permit and prison officials denied his request. He claims that in December 2017, while climbing onto a top bunk, he felt a sharp pain in his upper back that caused him to slip. He grabbed the bunk in an effort to prevent himself from falling and then felt a sharp pain in his belly button. He claims that several weeks after the incident, he felt a lump in his abdominal area and was told by prison officials he had a hernia. Plaintiff claims that he was not provided with surgery for his hernia, and, instead, was told to "push the hernia in." Plaintiff complains of having to endure "pain and suffering" as a result of the incidents/events described in the complaint. Plaintiff also alleges that he alerted Warden Varga and ARB Chairperson White about his need for medical care (by way of grievances) and that these individuals took no action.

Likewise, plaintiff's allegations are sufficient at this stage to state a colorable claim against Wexford. To state a § 1983 claim against a municipality, its subdivisions, or other local government units, a plaintiff must articulate facts supporting an inference that a municipal or local government custom, policy, or practice caused the constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) and explaining that a "municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation"). Courts apply this standard to claims against Wexford. *See Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) (applying *Monell* standard to jail healthcare provider); *Taylor v. Wexford Health Servs., Inc.*, No. 11 C 7386, 2012 WL 245165, at *4 (N.D. Ill. Jan. 26, 2012) ("As to Wexford, Plaintiff's claim is evaluated under the standard of *Monell* . . .."). Here, plaintiff alleges that

5

Wexford has a policy/practice of cutting costs in several ways, including not properly training its employees on how to process and treat inmates with serious medical needs (like hernias), and refusing to send inmates for surgery when necessary. Plaintiff claims that as a result of this policy/practice, he was denied medical attention/treatment for what he describes as a painful hernia. These allegations, at least at this stage, are sufficient to proceed against Wexford. *See Taylor*, No. 11 C 7386, 2012 WL 245165, at \*4-5; *see also Harper v. Wexford Health Sources Inc.*, No. 14-CV-04879, 2017 WL 2672299, at \*3 (N.D. Ill. June 21, 2017) (holding that plaintiff stated *Monell* claim against Wexford by "coupl[ing] his particular, detailed facts with a specific articulation of Wexford's alleged policy").

However, summonses shall not issue at this time. Due to the potential complexity of the medical issues presented in this case, the court finds that the recruitment of counsel is warranted. The court sua sponte recruits attorney Jeffrey Scott Becker, Swanson Martin & Bell LLP, 330 N. Wabash Avenue, Chicago, IL 60611 (312-321-8425), jbecker@smbtrials.com to represent plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rules. *See Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (when deciding whether to recruit counsel, directing district court to consider the severity of inmate's medical condition and the difficulty of conducting advance-stage litigation tasks that involve medical issues); *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (same). Counsel shall file an appearance and a brief status report indicating whether he intends to proceed with the complaint or file an amended complaint by the aforementioned date. If counsel believes that proceeding with the complaint or filing an amended complaint would be inconsistent with his Rule 11 obligations, he should so inform the court.

Date: 07/20/2018                    ENTER:

*Philip G. Reinhard*
United States District Court Judge

Docketing to Mail Notices. (LC)