# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Brandon Irvin, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Wexford Health Sources, Inc., et al., )<br>)<br>Defendants. ) | Case No. 18 CV 50105<br><br>Judge Philip G. Reinhard |

## ORDER

Defendant Wexford Health Sources, Inc.'s motion to dismiss [44] is denied. Defendant Mershon's motion to dismiss [52] is denied. Defendant Varga's motion to dismiss [42] is denied. Defendant White's motion to dismiss [55] is denied. The parties are ordered to contact Magistrate Judge Johnston's operations specialist within 14 days to discuss the scheduling of a settlement conference.

## STATEMENT-OPINION

**Background**

Plaintiff Brandon Irvin, incarcerated at Dixon Correctional Center ("Dixon"), brings this lawsuit pursuant to 42 U.S.C. § 1983 claiming deliberate indifference to his serious medical condition and inadequate medical treatment while in custody at Dixon. Plaintiff brings his claims against the Illinois Department of Correction's ("IDOC") medical service provider Wexford Health Sources, Inc. ("Wexford"), Dixon warden John Varga, Wexford's nurse practitioner Kristina Kay Mershon, and IDOC's Administrative Review Board ("ARB") member Dave White. Plaintiff's complaint also claims Wexford maintained a custom, policy, or practice that resulted in a deprivation of plaintiff's constitutional rights.

Plaintiff filed an amended complaint (through appointed counsel) on April 12, 2019 [40]. On May 8, 2019, defendants Wexford and Varga filed motions to dismiss plaintiff's amended complaint [42], [44]. On June 27, 2019, defendant Mershon filed a motion to dismiss plaintiff's amended complaint [52]. On July 8, 2019, defendant White filed a motion to dismiss plaintiff's amended complaint [55]. Plaintiff responded to all four motions to dismiss on August 21, 2019 [69], [70], [71], [72]. Defendants Mershon and Wexford filed replies to plaintiff's response on September 12, 2019 [73], [74].[1] All motions are now before the court.

---

[1] On July 23, 2019, Magistrate Judge Johnston set the briefing schedule on defendants' motions to dismiss, including the deadline of September 12, 2019, for replies [67] (*see also* [68]). No reply briefs were filed on behalf of defendant Varga or defendant White.

**Facts**

According to plaintiff's amended complaint, plaintiff was in custody at Dixon from at least 2017. In early 2017, he requested a low bunk permit for his back pain and was denied this request. In December 2017, plaintiff slipped and fell in his cell while climbing to his top bunk. Following his fall, on January 11, 2018, plaintiff saw defendant Mershon for abdominal pain. At that visit, defendant Mershon diagnosed plaintiff with a hernia. Defendant Mershon told plaintiff that Wexford would not pay for a hernia surgery because Wexford deemed it to be "cosmetic." Plaintiff instead was told to "push the hernia in" and avoid strenuous activity. Plaintiff was warned that the hernia could grow, become more painful, and could result in infection. On January 11, 2018, plaintiff filed a grievance requesting a low bunk permit and surgery for his hernia. Within his grievance, plaintiff discussed his chronic back pain, the denial of his low bunk permit, the fall in his cell, the denial of hernia surgery, and the possible complications of the hernia. Defendant Varga reviewed the grievance on January 18, 2018. Plaintiff's grievance was received by the ARB on January 26, 2018. ARB member defendant White reviewed the grievance on February 1, 2018. Defendant White noted there would be no further redress of plaintiff's grievance.

Plaintiff also alleges in his amended complaint that defendant Wexford maintains a policy or practice of ignoring prisoners' serious medical needs in the interest of cost-cutting to maximize profits. These policies and practices include delaying or denying treatment of prisoners for conditions requiring surgery, such as a hernia repair. Defendants' refusal to provide plaintiff with hernia surgery as well as reasonable accommodations to prevent further injury to his hernia place plaintiff at risk for medical complications, including hernia strangulation and infection, as well as continued pain and suffering.

In his complaint, plaintiff claims defendants' actions and inactions amount to deliberate indifference to his serious medical needs in violation of 42 U.S.C. § 1983, against the individual defendants and Wexford. Plaintiff's complaint seeks money damages.

**Standard of review**

When evaluating a Rule 12 (b)(6) motion to dismiss, the court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the . . . non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal citations omitted). "A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Id.* "To state a claim, a complaint must first provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing FED. R. CIV. P. 8(a)(2)). "The statement of the claim must sufficiently give 'fair notice of what the ... claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To state a claim for relief, a complaint must provide more than "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Instead, a plausible claim must include "'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trustees of the University of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Analysis

**Defendant Wexford Health Sources, Inc.**

Defendant Wexford argues plaintiff has failed to state a Section 1983 cause of action against Wexford under a theory of *Monell*. Plaintiff may only proceed against Wexford under the premise that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 796 (7th Cir. 2014); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Moreover, the policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Circ. 2004). And "[a]lthough *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing." *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016). Wexford argues plaintiff fails to allege specific facts that would support his allegations that Wexford maintained a policy or practice that violated his right to adequate medical care and subsequently caused his injuries, and instead only put forth generalized and conclusory allegations of a cost savings policy. Wexford also argues that because plaintiff alleges only his own medical treatment, it is not reasonable to infer any widespread policy.

Turning to the complaint, plaintiff asserts that Wexford maintains a system of policies and practices of ignoring prisoners' serious medical needs in the interest of cost-cutting. Plaintiff supports this allegation by stating that plaintiff was advised by defendant Mershon that Wexford would not pay for a hernia surgery because a hernia surgery was deemed by Wexford to be "cosmetic." Plaintiff's complaint claims Wexford failed to take measures to treat his medical condition, including hernia surgery. Plaintiff further claims Wexford deliberately and willfully deprived him of a low bunk permit, failed to respond to his requests for follow-up medical care, failed to notify IDOC staff of his need for follow-up care, and delayed necessary treatment. Plaintiff claims Wexford supports a policy that sanctions the maintenance of prison conditions that infringe on the constitutional rights of prisoners. In his response brief, plaintiff relies on defendant Mershon's statement regarding Wexford's refusal to pay for the hernia surgery as the basis for Wexford's unconstitutional policy and plaintiff's claim under *Monell*.

Wexford relies on *Arita v. Wexford Health Sources, Inc.*, No. 15-cv-01173, 2016 WL 6432578 (N.D. Ill. Oct. 31, 2016) in support of its dismissal argument. In *Arita*, plaintiff complained that Wexford's medical staff ignored his complaint of swelling and pain in his groin area for nine months before examining him. *Id.* at *1. When his was finally examined, tests revealed he was suffering from an inguinal hernia which required an operation. *Id.* While Arita did eventually receive a hernia operation, he complained that he suffered for over 12 months. *Id.* Arita brought suit against Wexford (among others) alleging that Wexford has a policy of ignoring inmates' medical needs. Specifically, Arita's *Monell* allegation was that "Wexford, upon information belief, has a policy of ignoring not only [his] requests/complaints, but other inmates' medical needs as well." *Id.* at *3. According to the district court, Arita's allegation ("upon information and belief") was unsupported by any facts regarding the experiences of other inmates. *Id.* "Nor does Arita's complaint shed any light on what Wexford's alleged policy might be – that

3

is, what specific policy might lead to the systematic disregard of inmates' medical needs." *Id*. The court granted Wexford's motion to dismiss, finding Arita's complaint to be factually unsupported, containing only boilerplate allegations. *Id*. Here, Wexford likens plaintiff's complaint to that of Arita's – arguing plaintiff's allegations are conclusory and baseless and fail to allege any facts to support an inference that an actual policy or practice was at issue as opposed to a single incident of delayed medical treatment.

However, defendant Wexford's argument that plaintiff's complaint does not set forth any allegation that defendant Mershon's comment represented a corporate-wide policy is not a fair reading of plaintiff's complaint. If true that Wexford deems hernia surgery "cosmetic," and therefore does not pay for this specific surgery, in the court's view, this would represent a policy that may show a deliberate indifference to an inmate's medical needs. The court finds the facts and allegations in *Arita* distinguishable from the case at bar. Wexford further argues plaintiff has failed to set forth facts to show an actual policy or practice as opposed to a single incident of delayed treatment as to one inmate. The court agrees with plaintiff that the classification of a hernia surgery as "cosmetic" suggests the possibility of a practice rather than a treatment decision aimed solely at plaintiff. *See Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2017 WL 2672299, at *3 (N.D. Ill. June 21, 2017) (holding that plaintiff stated *Monell* claim against Wexford by "coupl[ing] his particular, detailed facts with a specific articulation of Wexford's alleged policy"). *See also Watkins v. Ghosh*, No. 11 C 1880, 2011 WL 5981006, at *8 (N.D. Ill. Nov. 28, 2011) (plaintiff sufficiently alleged Wexford maintained a policy that directly caused plaintiff's underlying constitutional violation); *Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *4 (N.D. Ill. Aug. 16, 2017) ("Because Plaintiff has alleged the existence of a specific cost-cutting policy that prevented him from receiving timely and adequate medical care in violation of his constitutional rights, the Court finds that he has sufficiently stated a *Monell* claim.").

At this stage of the litigation, the complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)) (emphasis in original). The court makes no comment on the future of plaintiff's *Monell* claim against Wexford, but accepting the complaint as presented, plaintiff has presented a claim above the speculative level.[2] Therefore, defendant Wexford's motion to dismiss is denied.[3]

---

2 While the Seventh Circuit has weighed in on Wexford liability pursuant to *Monell* in inmate cases concerning health care for hernias, defense victories occur further down the litigation road where the court or jury has the benefit of full discovery. *See Heard v. Tilden*, 774 Fed. App'x. 985, 989 (7th Cir. 2019) (summary judgment in favor of Wexford where the court held a reasonable jury could not conclude from the record that Wexford maintained a blanket policy of denying non-emergency hernia surgery); *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521-22 (7th Cir. 2019) (Wexford entitled to judgment as a matter of law based on the fact that its hernia policy (which the court found was not a flat prohibition against surgical intervention for hernia) was not the moving force behind plaintiff's alleged Eighth Amendment violation).

3 Wexford also argues it cannot be held liable under a theory of vicarious liability because the doctrine of *respondeat superior* does not apply to Section 1983 claims. The court agrees. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014) ("*Respondeat superior* liability does not apply to private corporations under § 1983."). However, as noted in plaintiff's reply brief, plaintiff is not seeking a claim against Wexford under the doctrine of *respondeat superior*; plaintiff's *Monell* claim is directed against Wexford's own policies. *See Olive v. Wexford Corp., et al.*, 494 Fed. App'x. 671, 672 (7th Cir. 2012) ("Wexford is not liable for

4

**Defendant Kristina Kay Mershon**

Defendant Mershon argues plaintiff has violated FED. R. CIV. P. 8 by improperly "group pleading." She argues plaintiff's claims against her are lumped with claims against the IDOC, without setting forth sufficient allegations against her or without providing adequate notice to the claims she must defend. Plaintiff's complaint alleges he was seen by Mershon on January 11, 2018, for his abdominal pain and Mershon diagnosed him at that time with a hernia. She also told him that Wexford would not pay for a hernia surgery repair because Wexford deemed it to be a "cosmetic" procedure. In the body of Count II of plaintiff's complaint, plaintiff alleges that defendants Mershon, Varga, and White deliberately and willfully failed to provide or intentionally deprived plaintiff of a low bunk permit, surgery for his hernia, requests for follow-up medical care, and notice to IDOC of his need for follow-up care, as well as delayed necessary medical treatment. Plaintiff responds the complaint is clear that the nature of the claim against defendant Mershon is that she diagnosed him with a serious medical condition that required surgical treatment and she failed to ensure that he received appropriate care.

"A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Additionally, a complaint must adequately plead that "the defendant[s] personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). "But Rule 8(a) is 'not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer.'" *Gray v. City of Chicago, et al.*, No. 18 C 2624, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) (citing *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013)). And "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Rivera v. Lake County, et al.*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)).

The court agrees with plaintiff that his complaint has set forth allegations that defendant Mershon specifically diagnosed him with a hernia (a serious medical condition that required surgery) and failed to follow-up to ensure he received adequate care. Under the notice pleading standard of Rule 8(a)(2) and *Twombly*, the court finds Mershon has been given "fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Therefore, the court declines to dismiss plaintiff's claims against defendant Mershon on the grounds they constitute improper "group pleading."

**Defendant John Varga & Defendant Dave White**

Defendants Varga and White argue plaintiff has failed to allege they acted with deliberate indifference to his serious medical need, or that they were personally involved in his medical treatment. According to the complaint, plaintiff filed a grievance on January 11, 2018 requesting hernia surgery and a low bunk permit. Within the same grievance, plaintiff also reported chronic back pain, the denial of a low bunk permit, his fall from the top bunk causing him pain in his upper back and belly button, his hernia diagnosis, his request for and denial of hernia surgery, and the

---

[plaintiff's] acts unless they represent Wexford's own policy."). The court need not address this argument further.

possible complications from the hernia. Regarding defendants' personal involvement in plaintiff's grievance, plaintiff alleges defendant Varga reviewed the grievance on January 18, 2018, and defendant White reviewed the grievance on February 1, 2018 and noted that there would be no further redress of plaintiff's issues. Plaintiff claims defendants deliberately and willfully deprived him of a low bunk, the surgery he needed, and follow-up care for his medical condition. He further alleges defendants failed to notify the medical staff at Dixon of his need for follow-up care, and delayed necessary treatment for him. Defendants Varga and White argue plaintiff has failed to state a claim for deliberate indifference and ask the court to dismiss the claims against them.

A claim brought by a prisoner for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)). Defendants do not dispute plaintiff suffered from an objectively serious medical condition,[4] which leaves the court to determine if, based on the pleadings, the defendants were deliberately indifferent to that condition.

A deliberate indifference claim cannot be premised on a theory of *respondeat superior*. *Arnett,* 658 F.3d at 757. "However, an official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id*. (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Stated another way, a prison official may be found to be deliberately indifferent to a prisoner's serious medical need if he has a "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (7th Cir. 2004)).

As noted above, plaintiff's complaint alleges plaintiff saw defendant Mershon on January 11, 2018 for pain and was diagnosed with a hernia. Mershon advised plaintiff that Wexford would not pay for a hernia surgery as Wexford deemed that type of surgery "cosmetic." Plaintiff was instructed to push in the hernia and avoid certain activities. He was also told that the hernia could become more painful, get infected, and other medical complications could arise. On that same day, plaintiff filed a grievance requesting a low bunk permit (that had previously been denied) to prevent aggravating his hernia and surgery to repair the hernia. Defendant Varga reviewed the request on January 18, 2018. The grievance was then received by the ARB and reviewed by defendant White on February 1, 2018. White noted there would be no further redress of plaintiff's issue.

The court agrees with defendants Varga and White that plaintiff's complaint is not well-developed regarding their personal involvement in plaintiff's medical concerns. Plaintiff's complaint provides no details as to Varga's review of plaintiff's grievance; nor does it provide information on why defendant White decided that no further action would be taken on plaintiff's

---

4 *See Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) ("a hernia can be an objectively serious medical problem").

concerns. While, as noted above, a prison official may be found to be deliberately indifferent to a prisoner's medical need if he knows medical staff is mistreating (or not treating) a prisoner, "[n]on-medical defendants…can rely on the expertise of medical personnel…[and] if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755. However, the complaint does allege that despite plaintiff's grievance regarding his need for a low bunk permit and hernia surgery, neither defendant Varga nor defendant White provided him with any relief. In order to find deliberate indifference to plaintiff's serious medical need, plaintiff must show that Varga and White knew or had a reason to believe that he was not receiving adequate care from the prison's medical providers. It may be found that plaintiff's grievance will bear that out. While the court acknowledges the thin basis upon which plaintiff has pleaded personal involvement on the part of Varga and White, at this stage of the litigation, the court finds plaintiff has sufficiently pled an action against defendants Varga and White. Therefore, the motions to dismiss defendants Varga and White are denied.

**Conclusion**

Defendant Wexford Health Sources, Inc.'s motion to dismiss [44] is denied. Defendant Mershon's motion to dismiss [52] is denied. Defendant Varga's motion to dismiss [42] is denied. Defendant White's motion to dismiss [55] is denied. The court finds that a settlement conference in this matter may be productive. Therefore, the parties are ordered to contact Magistrate Judge Johnston's operations specialist within 14 days to discuss the scheduling of a settlement conference.

Date: 12/19/2019    ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)